## WRIGHT; administratrix, *v.* DURDEN.

1. The court did not err in admitting in evidence a deed executed by James Durden and his wife, Harriet Durden, conveying land which had been set aside as a homestead under the constitution of 1868, it appearing that the grantors remained in possession of the homestead estate until both were deceased and that the grantee and his successors in title claimed no rights or benefits under the deed except the reversionary interest.

2. The court did not err in admitting in evidence a deed, the objections to which were, "that the same did not convey title; that the same purported to convey the land levied on out of one W. P. Peeler as trustee of the children of E. E. Peeler, to wit, Horace, Florence, Walter, together with the children she may hereafter have, placed in said W. P. Peeler by one William Archer, dated June 14th, 1882, said deed being made without any order of court or authority of court or direction of the court of chancery; that the said deed could not operate to convey title into claimant; that no authority was shown in said grantors to convey the title to said land; and that no authority appeared in said grantor, or the signers of said deed, to make the same." These objections were not sufficient to show error in the ruling of the court. The deed conveyed some, if not the entire, interest in the land.

3. The court did not err in directing a verdict.

No. 4111.   APRIL 30, 1924.

Claim.   Before Judge Hardeman.   Washington superior court. December 8, 1923.

*M. L. Gross* and *Sibley & Sibley,* for plaintiff.

*Evans & Evans,* for defendant.

GILBERT, J.   In June, 1869, James Durden caused to be set aside to him, as a homestead, described land upon which he then resided.   On February 25, 1870, James Durden and his wife, Harriet Durden, executed a deed conveying the land covered by the homestead to William Archer, which deed was in form an absolute conveyance, but recited the existence of the homestead. This conveyance was made with the approval of the ordinary of the county, expressly by authority of the act of 1868 (Ga. Laws 1868, pp. 27, 29).   Official approval was endorsed on the face of the deed, in response to a petition to the ordinary, who recorded his approval and also made his entry of approval across the plat of the land in the record of the homestead proceedings.   On March 31, 1875, James Durden and his wife, Harriet Durden, executed a security deed covering the land to Charles H. Wright and Chauncey M. Wright.   The deed recited that a bond to reconvey was given by the grantees to the grantors.   This debt was afterwards reduced to judgment.   On October 3, 1877, execution issued from

the superior court in favor of C. H. Wright & Son against James Durden. This execution has been kept alive under the provisions of the law from the date of its issuance until November 6, 1922, when it was caused to be levied on the land by Mrs. L. S. Wright, administratrix of the estate of C. M. Wright, surviving partner of C. H. Wright & Son. The administratrix filed a deed to Carlos Durden as administrator of James Durden, conveying the land for purposes of levy and sale. On November 22, 1922, Chancey W. Durden filed a claim to the land. On the trial of the issue thus joined the court directed a verdict finding the property levied upon not subject. The plaintiff in fi. fa. made a motion for a new trial on the general grounds; also assigning error on the direction of the verdict, and on the admission of evidence over the objection, which will more fully appear hereinafter. The court overruled the motion for a new trial, and the movant excepted.

One ground of the motion for a new trial complains that the court erred in admitting in evidence a document "purporting to be a deed headed 'Washington County, Georgia,' for the recited consideration of $464, dated February 25, 1870, from James Durden and his wife, Harriet Durden, to William Archer, conveying the land levied on and in dispute, reciting that it is the same land 'on which said Durden lives, and having been set apart as a homestead for said Durden.'" In admitting this deed the court did not err. Although the deed from James and Harriet Durden was on its face an absolute conveyance in fee simple and although it recited the fact that the land had been set aside as a homestead to James Durden, there was evidence from which the jury might infer that it was a part of the contract evidenced by the deed that James and Harriet Durden were to continue to reside on the land and to have full control during their lifetimes by paying all taxes that might accrue against the lands. It thus appears without contradiction that the deed from James and Harriet Durden really conveyed the "reversionary interest" in the land after the expiration of the homestead. A deed executed by the head of a family, purporting to convey land which had been set apart as a homestead under the constitution of 1868, while inoperative and ineffectual as to the homestead estate in existence when it was made, did pass to the grantee the "reversionary interest" of the grantor in the land described. *Towns* v. *Mathews, 91 Ga.* 546 (5) (17 S.

E. 955); *Huntress* v. *Anderson,* 110 *Ga.* 427 (35 S. E. 671, 78
Am. St. R. 105), and authorities cited; *Walker* v. *Hodges,* 113 *Ga.*
1042 (39 S. E. 480); *Aiken* v. *Weldon,* 139 *Ga.* 15 (76 S. E. 359);
*Moughon* v. *Masterson,* 140 *Ga.* 699 (79 S. E. 561); *Nash* v. *Peoples Loan & Realty Co.,* 151 *Ga.* 40 (105 S. E. 641); *Browning*
v. *Barber,* 154 *Ga.* 221 (113 S. E. 797); Powell on Actions for
Land, § 262. It is urged by counsel for the movant that the deed
to the land set apart as a homestead under the constitution of
1868, based on section 11 of the act of 1868 (Ga. Laws 1868, pp.
27, 29), was absolutely void and conveyed no interest, since section
11 of that act had been declared unconstitutional. *Roberts* v.
*Trammell,* 55 *Ga.* 383. The decision of this court holding section
11 of the act of 1868 unconstitutional was followed by an act of
the General Assembly approved February 15, 1876 (Ga. Laws
1876, p. 51), providing a method for the "adjustment of the rights
of parties in cases where property which has been set apart under
the homestead and exemption laws of this State has heretofore
been sold," and in the same act it was provided in section 8 that
"all suits herein provided for shall be brought within six months
after the passage of this act, or the right of the party complainant
and all right of suit for its enforcement shall be forever barred."
Section 3 of the act is as follows: "Be it further enacted, that in
cases where all the proceeds of the sale of such property have been
applied to the benefit of said family, the court shall confirm the
sale, and thereafter the property so sold shall be discharged of the
particular estate aforesaid." The remedy afforded by the act of
1876 did not apply where the grantors of such land remained in
possession, as they did in this instance. *Saulsbury* v. *McCallum,*
65 *Ga.* 102; Powell on Actions for Land, 330, § 262; and see McElreath on the Constitution, 664, § 1336. For this reason we
deem it unnecessary to further dwell upon that act. However that
may be, the question as to the effect of the deed to Archer is absolutely foreclosed by the decisions in the cases above cited, where it
was held, that, although the homestead estate was not conveyed,
the "reversionary interest" was conveyed, and the reversionary
interest is all that was claimed by William Archer, and the reversionary interest had already become the entire estate at the time
of the trial of the claim case. Therefore it appears that there was

no reason why the deed to William Archer was not admissible in evidence.

2. It appears that Wm. Archer executed a deed conveying the land to W. P. Peeler as trustee for Elizabeth Peeler and her children. Subsequently W. P. Peeler, Elizabeth Peeler, and six children executed a deed conveying the land to the claimant, Chancey W. Durden. On the trial of the case the latter deed was offered in evidence by the claimant, and admitted over the objection of the plaintiff in fi. fa.; and this ruling of the court is made a ground of the motion for new trial. It is urged that this deed was not admissible, because it "did not convey title; that the same purported to convey the land levied on out of one W. P. Peeler as trustee of the children of E. E. Peeler, to wit, Horace, Florence, Walter, together with the children she may hereafter have, placed in said W. P. Peeler by one William Archer, dated June 14th, 1882, said deed being made without any order of court or authority of court or direction of the court of chancery; that the said deed could not operate to convey title into claimant; that no authority was shown in said grantors to convey the title to said land; that no authority appeared in said grantor, or the signers of said deed, to make the same." To object to the introduction of a deed on the ground that some of the grantors were not of age at the time the deed was executed is not the equivalent of showing that such is a fact. Where the fact does not appear, the omission is not supplied by stating such to be a fact as an objection. The evidence is not conclusive on the question, but tends to show that all grantors are of age. If it did not so appear, then the plaintiff in fi. fa. was under the necessity of producing evidence of that fact as a basis for requesting a ruling by the court in his instructions to the jury or otherwise. Conceding, however, that some of such grantors were minors, and also conceding the possibility of further issue of Elizabeth Peeler, these facts would afford no ground for defeating the claim. The issue in the claim case is whether under the facts the plaintiff in fi. fa. may subject the land to sale under the fi. fa. "It is not necessary, in order to support a claim under our statute, that a claimant shall show a complete and perfect title to the land. Any interest which renders the property not subject to the levying fi. fa., or which is inconsistent with the plaintiff's right to proceed in selling the property, will sustain the claim and

defeat the right to subject the property to a sale." *Wade* v. *Hamilton,* 30 *Ga.* 450 (2); *Roland* v. *Gregg,* 122 *Ga.* 819 (50 S. E. 949); *Penton* v. *Hall,* 140 *Ga.* 576 (79 S. E. 465); *Wheeler* v. *Martin,* 145 *Ga.* 164 (88 S. E. 951). The deed from Peeler et al. was sufficient to show an interest in the claimant and to connect the claimant with the title of Archer, and the title of Archer obtained long before the judgment and execution of Wright placed the land out of the reach of the execution. The court did not err in admitting in evidence the deed mentioned in this ground of the motion for a new trial.

3. Movant complains that the court directed a verdict for the claimant, instead of submitting the issue of possession to a jury. The return of the sheriff entered on the execution in reference to possession recited the following: "said lands being levied upon as the property of James Durden, defendant in fi. fa., and written notice of levy was this day given to Carlos Durden, the tenant in possession and the duly qualified administrator of the estate of James Durden." This return of the sheriff was sufficient to make a prima facie case for the plaintiff in fi. fa. as to the land being in possession of the defendant in fi. fa. at the time of the levy. If nothing else appeared, a judgment holding the land subject to sale under the fi. fa. would have been the only legal outcome. The claimant, however, introduced evidence tending to show that Carlos Durden, mentioned in the return of levy, was the tenant of the claimant and held the land for the claimant, and not as administrator of the estate of James Durden; also that the claimant had been in possession of the land continuously from a short time after the death of his mother, Harriet Durden, who survived James Durden. The claimant also introduced evidence to show that both James Durden and Harriet Durden, sole beneficiaries of the homestead, died previously to the levy; and that through the deeds from them to William Archer, and from Archer to W. P. Peeler, trustee, and from Peeler, trustee, and others to the claimant, the claimant, at the time of the levy, owned such an interest as to support the claim. This evidence of the claimant is without conflict. The question, therefore, is whether the prima facie case made by the plaintiff in fi. fa., based solely upon the return of the sheriff, is a sufficient contradiction or conflict with the evidence of the claimant to require the submission of the issue

to a jury. We do not think so. Here the title to an interest in property sufficient to support the claim is shown, without conflict, into the claimant. This necessarily overcomes the mere presumption arising from a return by the sheriff that the administrator of the defendant in fi. fa. was in possession. The evidence, with all reasonable deductions and inferences therefrom, demands a verdict for the claimant. In other words we hold that when title is shown into the claimant without conflict of evidence, the prima facie case made by the return of the sheriff is not such a conflict in the evidence under the Civil Code (1910), §5926, as would require submission of the issue to a jury.

*Judgment affirmed. All the Justices concur, except Hines, J., disqualified.*